EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Scotiabank de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>ZAF Corporation, Granite Stone Design, Inc., Fidel Castillo Ortiz, Zulma Castillo Ortiz y Angelina Ortiz Cintrón<br><br>Recurridos | Certiorari<br><br>2019 TSPR 90<br><br>202 DPR ____ |

Número del Caso: CC-2016-299

Fecha: 9 de mayo de 2019

Tribunal de Apelaciones:

Región Judicial de Bayamón, Panel V

Abogada de la parte peticionaria:

Lcda. Lynnette Berríos Mercado

Abogada de la parte recurrida:

Lcda. Grace Monge Lafosse

Materia: Derecho Procesal – Criterio para determinar si una solicitud de orden constituye un asunto de descubrimiento de prueba o un remedio provisional en aseguramiento de Sentencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Scotiabank de Puerto Rico

    Peticionario

       v.

| ZAF Corporation, Granite Stone Design, Inc., Fidel Castillo Ortiz, Zulma Castillo Ortiz y Angelina Ortiz Cintrón | CC-2016-299 | Certiorari |
| --- | --- | --- |

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 9 de mayo de 2019.

En esta ocasión nos corresponde determinar si una *Solicitud de orden urgente* para que se depositen unos pagarés en la bóveda del Tribunal de Primera Instancia constituye un asunto de descubrimiento de prueba o si se trata de un remedio provisional en aseguramiento de sentencia.

Por considerar que la *Solicitud de orden urgente* iba estrictamente dirigida a probar las alegaciones del caso y que, además, en nada asegura la efectividad de la sentencia que en su día emita el Tribunal de Primera Instancia,

concluimos que estamos ante un asunto de descubrimiento de prueba y no ante un remedio provisional en aseguramiento de sentencia. En consecuencia, el Tribunal de Apelaciones carecía de jurisdicción para revisar el recurso de *certiorari* y revocar al Tribunal de Primera Instancia.

I

El caso ante nuestra consideración se originó mediante la presentación de una demanda por parte de Scotiabank de Puerto Rico (peticionario) sobre cobro de dinero y ejecución de hipoteca en contra de ZAF Corporation, Granite Stone Design, Inc., el Sr. Fidel Castillo Ortiz, la Sra. Zulma Castillo Ortiz y la Sra. Angelina Ortiz Cintrón (en conjunto, recurridos). En resumen, el peticionario alegó que adquirió ciertos activos de RG Premier Bank (RG) a través del Federal Deposit Insurance Corporation (FDIC), entre los que se encontraban 3 préstamos otorgados a los recurridos. Arguyó que los pagarés adquiridos fueron endosados a su favor y, además, se catalogó como tenedor de buena fe. Adujo que los recurridos incumplieron con los términos de los préstamos al no efectuar los pagos correspondientes. Así, solicitó que se declarase "ha lugar" la demanda y se condenara a los recurridos al pago de las sumas adeudadas.

Por su parte, los recurridos enviaron al peticionario un *Primer pliego de interrogatorios, producción de documentos y requerimiento de admisiones.* Mediante éste, los recurridos solicitaron al peticionario

inspeccionar los pagarés originales y sus correspondientes anejos para endosos ("*allonges*"). En respuesta, el peticionario contestó ese primer pliego y en lo pertinente indicó que estaba disponible para la inspección de los pagarés originales y los "*allonges*" en sus oficinas principales.[1] Tiempo después, las partes se reunieron para propósitos de realizar la referida inspección.

Posteriormente, los recurridos contestaron la demanda y presentaron una reconvención. En síntesis, los recurridos negaron las alegaciones de la demanda y arguyeron que en las reuniones celebradas entre éstos y el peticionario éste último se negó a mostrarle un alegado pagaré suscrito por $2.4 millones. En cuanto a los pagarés suscritos por $1,528,000 y $872 millones, los recurridos adujeron que el peticionario no era dueño ni tenedor de éstos debido a que RG los había vendido en el mercado secundario de hipotecas y que, consecuentemente, dichos pagarés fueron convertidos en un valor antes de que el FDIC interviniese con RG. Conforme a ello, arguyeron que, al momento de la alegada venta, RG cobró su acreencia y derivó una ganancia a través de un inversionista que participó en el mercado secundario. Por ello, los recurridos adujeron que los pagarés no fueron parte del listado de activos que adquirió el peticionario mediante el "*Purchase and Assumption Agreement*" otorgado entre éste

---

[1] Véase *Contestación a primer pliego de interrogatorios, producción de documentos y requerimiento de admisiones*, Apéndice de la Petición de *certiorari*, pág. 753.

y el FDIC. Para sustentar su alegación, los recurridos anejaron un estudio titulado "*Certified Securitization Analysis*". En consecuencia, alegaron que el peticionario carecía de legitimación para cobrar la alegada deuda. Acorde a lo anterior, los recurridos reconvinieron y presentaron 20 causas de acción, entre ellas: inexistencia y extinción de los pagarés.

Además, por entender que existía una controversia en torno a la titularidad y autenticidad de los pagarés, los recurridos presentaron una *Solicitud de orden urgente* para que el peticionario depositara los pagarés en la caja fuerte de la bóveda del Tribunal de Primera Instancia.[2] Ello con el propósito de que un perito realizara una inspección forense de los pagarés; que se preservara evidencia para el juicio de epígrafe y tras alegar que dichos pagarés constituían evidencia potencial de delito, la cual debía preservarse "para que se ejecut[ara] el *Subpoena Duces Tecum* del Gran Jurado que tramitará el F.B.I tras los resultados de la inspección forense del pagaré".[3] Nótese que la teoría de los recurridos se basa en que los pagarés en posesión del peticionario son falsos porque éstos fueron vendidos en el mercado secundario de hipotecas y, consecuentemente, tienen que estar en manos de un custodio designado o, en la alternativa, si los pagarés son auténticos, entonces el peticionario violentó

---

[2] Véase *Solicitud de orden urgente*, Apéndice de la Petición de *certiorari*, págs. 651-656.

[3] Íd., págs. 653-654.

varias leyes federales por extraerlos del custodio designado.

Así, los recurridos solicitaron al foro de instancia que ordenara el depósito de los pagarés en la correspondiente bóveda para que "se preserve la evidencia para el trámite judicial civil estatal y para el enjuiciamiento criminal que proceda tras el resultado de la inspección forense de los susodichos pagarés".[4]

Posteriormente, el peticionario presentó una *Réplica a la reconvención*. En síntesis, negó la mayoría de las alegaciones y reiteró que no era sucesor de RG, sino que adquirió los pagarés a través del FDIC por endoso a su favor, lo que le cataloga como un tenedor de buena fe. Añadió que los recurridos ratificaron sus obligaciones y aceptaron al peticionario como acreedor y tenedor mediante las posteriores modificaciones de los préstamos plasmadas en el "*First Admentment to Loan Agreement*".

Además, el peticionario presentó una *Oposición a solicitud de orden urgente*, en la cual alegó que los recurridos no contaban con un ápice de evidencia para sustentar sus alegaciones, que la totalidad de los documentos que acreditan la deuda gozan de una presunción de legalidad y que su única finalidad era retrasar los procedimientos. Añadió que en la *Contestación al primer pliego de interrogatorios, producción de documentos y requerimiento de admisiones* expuso bajo juramento que los

---

[4] Íd., pág. 655.

pagarés no habían sido vendidos a terceros y que, además, se les había permitido la inspección de los pagarés originales debidamente otorgados y/o endosados a su favor. Por último, el peticionario solicitó al tribunal de instancia la imposición de honorarios por temeridad.[5]

Ante ello, los recurridos presentaron una *Réplica a: oposición a depósito de pagarés.* En resumen, reiteraron que existe una controversia en torno a la titularidad y autenticidad de los pagarés. Arguyeron que -contrario a lo alegado por el peticionario- tenían evidencia que sustentaba sus alegaciones. Para fundamentar lo anterior, aludieron al *"Certified Securitization Analysis"* anejado en la *Contestación a la demanda y reconvención.* Por último, alegaron que la reconvención tenía como propósito obtener un decreto declaratorio, que era necesario consignar los pagarés en la bóveda del tribunal de instancia y así: "(1) evitar "spoliation of evidence"; (2) preservar evidencia para el Juicio; y (3) proveer las condiciones para que el perito forense conduzca su inspección y pueda ser testigo pericial tras su Informe Forense".[6]

Evaluados los planteamientos de ambas partes, el 29 de mayo de 2015 el Tribunal de Primera Instancia notificó una Orden en la que declaró "ha lugar" a la

---

[5] Véase *Oposición a solicitud de orden urgente*, Apéndice de la Petición de *certiorari*, págs. 684-687.

[6] Véase *Réplica a: oposición a depósito de pagarés*, Apéndice de la Petición de *certiorari*, págs. 689-700.

*Oposición a solicitud de orden urgente* presentada por el peticionario.[7] Es decir, no permitió el depósito de los pagarés en la bóveda del tribunal de instancia.

Inconformes, el 22 de junio de 2015 los recurridos acudieron ante el Tribunal de Apelaciones y presentaron una *Solicitud de certiorari*. Como único señalamiento de error expusieron lo siguiente:

> El Tribunal de Primera Instancia erró: (1) al rehusar dictar orden sobre medidas provisionales y cautelares para: (a) evitar "*spoliation of evidence*", (b) proveer las condiciones para que el perito forense conduzca su inspección y pueda ser testigo pericial tras su Informe Forense, y (c) preservar evidencia -bajo la custodia del tribunal- para el juicio del caso de epígrafe y la investigación del F.B.I luego de las resultas del Informe Forense.[8]

Por su parte, el peticionario presentó una *Oposición a solicitud de certiorari*.[9] En resumen, el peticionario alegó que -como cuestión de umbral- el Tribunal de Apelaciones carecía de jurisdicción debido a que los recurridos pretendían revisar un asunto de descubrimiento de prueba y no una orden en aseguramiento de sentencia. Expuso que la *Solicitud de Orden Urgente* para que se depositaran los pagarés en la bóveda del tribunal de instancia no estaba contemplada dentro de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Añadió

---

[7] Véase *Orden*, Apéndice de la Petición de *certiorari*, pág. 7.

[8] Véase *Solicitud de certiorari*, Apéndice de la Petición de *certiorari*, pág. 708.

[9] Véase *Oposición a solicitud de certiorari*, Apéndice de la Petición de *certiorari*, págs. 722-737.

que los recurridos ni siquiera argumentaron que la falta de revisión constituiría un fracaso de la justicia.

De otra parte, el peticionario añadió que en la demanda anejó copia de todos los documentos acreditativos de la deuda, que éstos son fehacientes y que gozan de una presunción de corrección y legalidad. Adujo que el 2 y 6 de marzo de 2015 le permitió a los recurridos evaluar los pagarés originales y demás documentos, y que los recurridos otorgaron un acta notarial sobre dichos actos. Además, arguyó que si la pretensión de los recurridos era hacer un estudio pericial entonces debieron solicitarlo a través de las Reglas de Procedimiento Civil relativas al descubrimiento de prueba.

Posteriormente, el 14 de enero de 2016 el Tribunal de Apelaciones notificó una Sentencia mediante la cual revocó la determinación del Tribunal de Primera Instancia y concedió el remedio solicitado por los recurridos.[10] En síntesis, razonó que las medidas provisionales establecidas en la Regla 56.1, *supra*, no son de carácter taxativo y que el peticionario no demostró que el depósito de los pagarés en la bóveda del foro de instancia le causara perjuicio potencial.[11]

---

[10] Destacamos que el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia y concedió el mal denominado remedio provisional sin la imposición de una fianza.

[11] Véase Sentencia del Tribunal de Apelaciones, Apéndice de la Petición de *certiorari*, págs. 773-790. El Tribunal de Apelaciones partió de una premisa errada al aseverar que los recurridos presentaron la *Solicitud de orden urgente* al amparo de la Regla 56.1 de Procedimiento Civil, *supra*, sobre remedios provisionales en aseguramiento de sentencia. Nótese que no fue hasta la *Réplica a: oposición a depósito de pagarés* que los recurridos aludieron a la

En desacuerdo, el 1 de abril de 2016 los peticionarios acudieron ante esta Curia mediante la presentación de una Petición de *certiorari* y esbozaron los siguientes señalamientos de error:

> Erró el Tribunal de Apelaciones al acoger el recurso de *certiorari* presentado en el caso de Scotiabank de Puerto Rico v. ZAF Corporation, KLCE201500847 [,] como una revisión de una orden provisional en aseguramiento de sentencia, cuando la orden recurrida se refiere a un asunto de descubrimiento de prueba no revisable mediante *certiorari* en esta etapa de los procedimientos.

> Erró el Tribunal de Apelaciones al determinar que la solicitud de orden de descubrimiento de prueba presentada por ZAF Corporation cumplió con las disposiciones de la Regla 56.1 de [P]rocedimiento [C]ivil sobre embargo provisional en aseguramiento de sentencia y que en efecto la medida solicitada era un remedio provisional.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

A. <u>La Regla 52.1 de Procedimiento Civil sobre apelación, *certiorari*, certificación y otros procedimientos para revisar sentencias o resoluciones</u>

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita las instancias en las que el Tribunal de Apelaciones puede expedir los recursos de *certiorari*.[12] El delimitar la revisión a instancias específicas tiene como propósito evitar la dilación que causaría la revisión

_____

Regla 56.1 de Procedimiento Civil, *supra*. Ello sin hacer mención de cómo el depósito de pagarés en la bóveda del foro de instancia aseguraría la sentencia que en su día pudiera dictarse a su favor.

[12] Es sabido que el Tribunal de Apelaciones también deberá evaluar la expedición del recurso de *certiorari* dentro de las disposiciones de la Regla 40 de su Reglamento, 4 LPRA Ap. XXII.

judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación.[13] En lo pertinente, la Regla 52.1 de Procedimiento Civil, *supra*, dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56** y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1. (Énfasis nuestro).

Nótese que la Regla 52.1 de Procedimiento Civil, *supra*, prohíbe la revisión mediante *certiorari* de las resoluciones u órdenes interlocutorias, salvo en determinadas excepciones.[14] La primera excepción sobre remedios provisionales es la que nos compete.

---

[13] Mun. Autónomo de Caguas v. JRO Construction, 2019 TSPR 10, 201 DPR __ (2019); Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2017).

[14] Mun. Autónomo de Caguas v. JRO Construction, supra; Rivera Figueroa v. Joles European Shop, 183 DPR 580, 594 (2011).

B. <u>Los remedios provisionales para asegurar la efectividad de una sentencia</u>

La Regla 56.1 de Procedimiento Civil, 32 LPRA Ap. V, enumera las medidas o remedios provisionales que tiene disponible un demandante en aras de **proteger la efectividad de la sentencia** que en su día pudiese emitir un tribunal.[15] Es decir, la Regla 56.1 de Procedimiento Civil, *supra*, provee los mecanismos para que el demandante pueda **cobrar el dictamen** que recayó o recaiga mediante sentencia a su favor.[16] Dicho de otro modo, el remedio provisional tiene como fin asegurar que el demandante pueda **satisfacer su acreencia**.[17] Mediante la presentación de una moción, ya sea antes o después de dictada la sentencia, el demandante solicitará el remedio provisional que entienda necesario para **asegurar la ejecución de la sentencia**. No obstante, el tribunal tiene discreción para conceder o denegar el remedio provisional.[18]

En específico, la Regla 56.1 de Procedimiento Civil, *supra*, dispone lo siguiente:

> En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para **asegurar la efectividad de la sentencia**. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la

---

[15] <u>Citibank v. ACBI</u>, 2018 TSPR 119, 200 DPR __ (2018); <u>Acevedo Feliciano v. Iglesia Católica</u>, 2018 TSPR, 106, 200 DPR __ (2018).

[16] <u>BBVA v. S.L.G. López, Basso</u>, 168 DPR 700, 708 (2006).

[17] Íd., pág. 716.

[18] <u>Nieves Díaz v. González Massas</u>, 178 DPR 820, 839 (2010).

prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial. (Énfasis nuestro).

Nuestro ordenamiento jurídico establece la Regla 56.1 de Procedimiento Civil, *supra*, **"con el propósito de asegurar la efectividad de las sentencias y reivindicar así, no solo la justicia debida a las partes, sino la dignidad de la función judicial"**.[19] Nótese que la facultad que provee la Regla 56.1 de Procedimiento Civil, *supra*, es en reconocimiento al interés social de que existan remedios adecuados para el **cobro** de deudas o reclamaciones.[20] Entiéndase, que se satisfaga el derecho del reclamante, según se disponga mediante sentencia.[21] Por ello, "[p]ara alcanzar esta finalidad, las leyes o reglas que proveen para el aseguramiento deben interpretarse con amplitud y liberalidad".[22]

El tribunal tiene amplia discreción para conceder o denegar el remedio solicitado y, además, para determinar el remedio que estime adecuado debido a que la lista

---

[19] Román v. S.L.G Ruiz, 160 DPR 116, 120-121 (2003); Stump Corp. v. Tribunal Superior, 99 DPR 179, 183-184 (1970).

[20] Íd.

[21] Román v. S.L.G Ruiz, supra, pág. 125.

[22] R. Hernández Colón, Práctica Jurídica de Puerto Rico: derecho procesal civil, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 186, citando a León Jiménez v. Corte de Distrito de San Juan, 52 DPR 892, 893 (1938).

establecida en la Regla 56.1 de Procedimiento Civil, *supra*, no es taxativa.[23] "Se concede la [medida cautelar] que mejor asegure la reclamación del demandante y la que menos inconvenientes ocasione al demandado".[24]

A la hora de determinar si procede la concesión del remedio solicitado, el tribunal -en el ejercicio de su discreción- deberá evaluar los siguientes criterios, a saber: (1) que el remedio solicitado sea provisional; (2) **que el mismo tenga el objetivo de asegurar la efectividad de la sentencia que en su día dicte el tribunal**, y (3) que se tomen en consideración los intereses de ambas partes, según lo requiera la justicia sustancial y las circunstancias del caso.[25] (Énfasis nuestro).

Con respecto al segundo criterio antes esbozado, este Tribunal ha expresado que el aseguramiento de sentencia se refiere a una "medida tomada por el tribunal a solicitud de parte en un pleito pendiente **con el propósito de que la sentencia pueda ejecutarse**".[26] (Énfasis nuestro).

A modo de ejemplo, en cuanto al remedio provisional de embargo hemos establecido que entre los efectos de dicho mecanismo se persigue:

---

[23] Citibank v. ACBI, supra.

[24] Hernández Colón, op. cit., pág. 186.

[25] Íd., Cacho Pérez v. Hatton Gotay, 195 DPR 1, 13 (2016); Nieves Díaz v. González Massas, supra, págs. 839-840 y Freeman v. Tribunal Superior, 92 DPR 1, 25-26 (1965).

[26] Cacho Pérez v. Hatton Gotay, supra, pág. 13.

sujetar los bienes embargados al cumplimiento de la obligación o reclamación en el proceso principal, esto es asegurar la efectividad de la sentencia que pueda dictarse si prospera la acción presentada. Por lo tanto, la eficacia de esta medida cautelar depende de la acción ejercitada.[27]

Por otro lado, es importante destacar que la Regla 56.2 de Procedimiento Civil, 32 LPRA Ap. V, en lo pertinente, establece lo siguiente:

No se concederá, modificará, anulará, ni se tomará providencia alguna sobre un remedio provisional, sin notificar a la parte adversa y sin celebrar una vista, excepto según se dispone en las Reglas 56.4 y 56.5 de este apéndice.

C.   El descubrimiento de prueba

Las Reglas de Procedimiento Civil "proveen una serie de mecanismos que las partes pueden utilizar para descubrir, obtener o perpetuar la prueba necesaria para **sustanciar sus alegaciones en el acto del juicio".** (Énfasis nuestro).[28] Es sabido que el descubrimiento de prueba debe ser amplio y liberal.[29] En lo pertinente, la Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V, establece lo siguiente:

El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:

(a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en

---

[27] Nieves Díaz v. González Massas, supra, págs. 840-841.

[28] Hernández Colón, op. cit., pág. 333, citando a Rivera Durán v. BPPR, 152 DPR 140, 150 (2000).

[29] Rivera Alejandro v. Algarín, 112 DPR 830, 833-834 (1982).

> controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.

De la propia Regla 23.1 de Procedimiento Civil, *supra*, se denota que ésta limita el descubrimiento en 2 aspectos: a saber: (1) que lo que se pretende descubrir no sea materia privilegiada y (2) que sea pertinente. Ello conforme a que "la tendencia moderna en el ámbito del procedimiento civil es a facilitar el descubrimiento de prueba de forma tal que se coloque al juzgador en la mejor posición posible para resolver justamente".[30]

### III

Como mencionáramos, la controversia ante nuestra consideración se circunscribe a determinar si la *Solicitud de orden urgente* presentada por los recurridos constituye un asunto de descubrimiento de prueba o si se trata de un remedio provisional en aseguramiento de sentencia. A tales efectos, el peticionario sostiene que la *Solicitud de orden urgente* no constituye un remedio provisional en aseguramiento de sentencia, sino que es un asunto de descubrimiento de prueba debido a que los recurridos pretenden probar sus alegaciones. En consecuencia, el

---

[30] ELA v. Casta Developers, 162 DPR 1, 9 (2004).

peticionario alega que el Tribunal de Apelaciones carecía de jurisdicción bajo la Regla 52.1 de Procedimiento Civil, *supra*, para revisar y revocar la denegatoria del foro de instancia. Tiene razón. Veamos.

Tras examinar la *Solicitud de orden urgente* y los demás escritos presentados por los recurridos, es importante observar en qué dirección va dirigida su solicitud. Es decir, qué propósito pretenden lograr los recurridos con el depósito de los pagarés en la bóveda del Tribunal de Primera Instancia. A tenor con lo anterior, debemos plantearnos la siguiente interrogante: ¿el depósito de los pagarés en la bóveda del Tribunal de Primera Instancia asegura la ejecución de la sentencia que en su día pueda recaer a favor de los recurridos? Contestamos en la negativa.

Con el depósito de los pagarés en la bóveda del Tribunal de Primera Instancia, los recurridos pretenden realizar una inspección forense para establecer que los pagarés en posesión del peticionario supuestamente son falsos porque éstos fueron vendidos en el mercado secundario de hipotecas y, consecuentemente, deben estar en manos de un custodio designado o, en la alternativa, si los pagarés son auténticos, entonces el peticionario violentó varias leyes federales por extraerlos de dicho custodio. Recordemos que, a través de la *Solicitud de orden urgente*, los recurridos solicitaron al foro de instancia que se depositaran los pagarés en la bóveda del

tribunal para: (1) evitar la destrucción de prueba ("*spoliation of evidence*"); (2) preservar evidencia para el juicio, y (3) proveer las condiciones para que el perito forense conduzca su inspección y pueda ser testigo pericial tras realizar su informe forense.

A su vez, en la súplica de su solicitud los recurridos solicitaron que se permitiera el depósito de los pagarés en la bóveda del tribunal de instancia para que "se preserv[ara] la evidencia para el tramite judicial civil estatal y para el enjuiciamiento criminal que proceda tras el resultado de la inspección forense de los susodichos pagarés".[31]

A todas luces, con la *Solicitud de orden urgente* para que se depositen los pagarés en la bóveda del tribunal de instancia los recurridos pretenden **probar su teoría** y, en consecuencia, que el Tribunal de Primera Instancia los libere del pago de la deuda reclamada. Ello, sin duda, es materia de descubrimiento de prueba y no un remedio provisional en aseguramiento de sentencia.

Cuando los tribunales ejercen su discreción y conceden un remedio provisional al amparo de la Regla 56.1 de Procedimiento Civil, *supra*, es con el propósito de que la sentencia no quede en el vacío y pueda ejecutarse satisfactoriamente. A la hora de ejercer su discreción, el tribunal que tiene ante su consideración una solicitud de remedios provisionales deberá evaluar si el remedio es

---

[31] Véase *Solicitud de orden urgente*, Apéndice de la Petición de *certiorari*, pág. 651.

provisional, si asegura la sentencia y, además, deberá tomar en consideración y sopesar los intereses de ambas partes en el pleito.

Nótese que tanto los recurridos como el Tribunal de Apelaciones fallaron en explicar cómo es que el depósito de los pagarés aseguraría la sentencia que pudiese recaer a su favor. Tampoco argumentaron por qué el foro de instancia abusó de su discreción al denegar la *Solicitud de orden urgente*. Así, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia y concedió el mal denominado remedio provisional sin pasar juicio sobre el criterio medular que requiere que el remedio provisional opere en función del cobro, la ejecución, la efectividad y la reivindicación de la dignidad del tribunal. El Tribunal de Apelaciones solo indicó que las medidas provisionales establecidas en la Regla 56.1 de Procedimiento Civil, *supra*, no son de carácter taxativo y que el peticionario no demostró que el depósito de los pagarés en la bóveda del foro de instancia le causara perjuicio potencial. Lo anterior es secundario, pues lo principal es que, en efecto, el remedio provisional facilite el recobro del dictamen. Es decir, que opere en función de garantizar la efectividad de la sentencia.

Al respecto, este Tribunal ha sido enfático en que la figura de remedios provisionales en aseguramiento de sentencia tiene como propósito **"asegurar la efectividad de las sentencias y reivindicar así, no solo la justicia**

**debida a las partes, sino la dignidad de la función judicial".**[32]

Por todo lo anterior, es forzoso concluir que el depósito de los pagarés en la bóveda del tribunal de instancia no garantiza la ejecución de la sentencia.

Los recurridos tampoco invocaron la jurisdicción del Tribunal de Apelaciones a base de que no preservar los pagarés "constituiría un fracaso irremediable de la justicia". Regla 52.1 de Procedimiento Civil, *supra*. Por eso, no podemos basarnos en esa disposición de la citada regla para justificar la jurisdicción del Tribunal de Apelaciones. Así pues, ausente cualquier base legal para la intervención del foro apelativo intermedio, es forzoso concluir que éste no podía intervenir con la resolución interlocutoria del tribunal de instancia.

IV

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones por haberse dictado sin jurisdicción y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad a lo aquí dispuesto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado.

---

[32] Román v. S.L.G Ruiz, 160 DPR 116, 120-121 (2003); Stump Corp. v. Tribunal Superior, 99 DPR 179, 183-184 (1970).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Scotiabank de Puerto Rico

    Peticionario

       v.

ZAF Corporation, Granite      CC-2016-299      Certiorari
Stone Design, Inc., Fidel
Castillo Ortiz, Zulma
Castillo Ortiz y Angelina
Ortiz Cintrón

    Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 9 de mayo de 2019.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones por haberse dictado sin jurisdicción y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad a lo aquí dispuesto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo